**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| IDA HERNANDEZ,<br>800 4th Street, SW, S310<br>Washington, DC 20024 )<br><br>Plaintiff, )<br><br>v. )<br><br>DAVID S. MAO, Acting Librarian<br>LIBRARY OF CONGRESS,<br>101 Independence Ave. SE<br>Washington, DC 20540 )<br><br>Defendant. ) | Case Number<br>Assigned Judge:<br><br><br><br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff, IDA HERNANDEZ, (hereinafter "Plaintiff"), by and through undersigned counsel,

hereby submits this complaint against DAVID S. MAO, in his capacity as Acting Librarian,

Library of Congress (hereinafter "Defendant") and states as follows:

**JURISDICTION AND VENUE**

1. This case arises under the Constitution and laws of the United States of America and
   presents a federal question within this Court's jurisdiction under Article III of the
   Constitution; 28 U.S.C. § 1331, 1343; and 42 U.S.C. §§ 2000e-5(f), 2000e-16.

2. Venue is proper in this judicial district under 28 U.S.C. § 1392(b) and 42 U.S.C. § 2000e-
   5(f) because: (1) the Library of Congress is within this judicial district; (2) the events or
   omissions giving rise to Plaintiff's claim for relief occurred in this judicial district; (3) the
   unlawful acts are alleged to have been committed in this judicial district; (4) the records

relevant to such acts are maintained and administered in this judicial district; and (5) Plaintiff is employed with Defendant in this judicial district.

3.  Plaintiff has fulfilled all conditions precedent under Title VII of the Civil Rights Act of 1964 prior to instituting this lawsuit, as necessary, and has otherwise exhausted her administrative remedies.

## STATEMENT OF FACTS

4.  Plaintiff began working as a permanent employee at the Library of Congress (LOC) in 2006 where she worked very successfully for several different EEO Directors as a Special Assistant, GS-14, and was part of the management teams for the EEO Directors from 2006 until 2011.

5.  Plaintiff had a very close working relationship with Naomi Earp, the EEO Director from 2009 to 2011.

6.  Prior to 2012, Plaintiff received "Outstanding" performance appraisals from Earp and the other EEO Directors.

7.  Kirk Rascoe began his employment at LOC in June 2012 as the OIC Director.

8.  Rascoe immediately made Plaintiff feel extremely uncomfortable. When Plaintiff first introduced herself to Rascoe, he looked her up and down and said "Oh yea, what can you do for me?"  Therefore, from the beginning of his employment at LOC, Rascoe's demeanor was inappropriate and made Plaintiff feel very uncomfortable as a female.

9.  After Rascoe began his employment at LOC, Plaintiff attempted to explain to Rascoe what her duties were as his Special Assistant. Rascoe told Plaintiff that her duties were boring. When she tried to brief him on issues she had previously handled under prior Directors, Rascoe did not want to communicate with her and told her that the issues were

management issues and were none of her business. Rascoe often did not let Plaintiff complete her briefings to him because he usually wanted to talk about personal issues, which made Plaintiff feel uncomfortable. Whenever Plaintiff attempted to return to the issue she was attempting to brief him on, Rascoe told her that the management issue was none of her business and "don't worry your little head about that." Plaintiff felt that from the beginning, Rascoe's communication with her was an effort to intimidate her into having a more submissive role. Rascoe minimized Plaintiff's professional contributions, dismissed her ideas and suggestions, and isolated her from information she needed to properly perform her job as Special Assistant.

10. Rascoe often commented on Plaintiff's physical appearance and how she was dressed. Rascoe repeatedly critiqued her manner of dress, commented on the shoes she wore, that he did not like her wearing men's sweaters, and repeatedly questioned why she did not wear one of his used shirts he had given to her. Rascoe's comments made Plaintiff very uncomfortable, especially when he gave her one of his own shirts and continuously asked her when she was going to wear it. Plaintiff was surprised and offended that Rascoe thought it was acceptable to give her a personal item such as his own shirt.

11. Rascoe repeatedly used the Spanish term "QUERIDA", which in English means "dear" "dear one" and "lover", to refer to Plaintiff. Rascoe began to refer to Plaintiff as QUERIDA only a few days after he began his employment at LOC and utilized the term almost daily in his interactions with Plaintiff. Plaintiff was "stunned" the first time Rascoe invited her into his office and addressed her using the word QUERIDA. Having grown up in Texas with her first language as Spanish, to Plaintiff, QUERIDA was a term that denoted a man's paid lover or when a man was having an extramarital affair with a

woman. Rascoe's use of the term made Plaintiff feel embarrassed, confused, and disrespected.

12. On July 20, 2012, Plaintiff informed Rascoe that the term QUERIDA is used in the Mexican American community to "denote a man's paid other woman or lover," and that his use of that term was offensive and unwelcome. Rascoe's response to Plaintiff was to laugh at Plaintiff and to argue with her regarding the definition of the term. Rascoe even took out his English-Spanish dictionary to dispute the definition of the term with Plaintiff. Plaintiff felt Rascoe was making fun of her and found his laughing at her to be extremely offensive. Plaintiff left Rascoe's office in shock at how the Library's EEO Director was comfortably and authoritatively engaging in discriminatory sexual harassment.

13. Despite Plaintiff having made it clear that she found Rascoe's use of the term QUERIDA offensive, inappropriate and unwelcome, Rascoe continued to utilize the term QUERIDA to refer to Plaintiff. For example, on August 13, 2012, Rascoe called Plaintiff QUERIDA at a meeting in the presence of two other OIC employees, Roberto Salazar and Eric Eldritch.

14. Roberto Salazar, Program Specialist, GS-14, in OIC, heard Rascoe use the term QUERIDA to refer to Plaintiff on many occasions. Salazar grew up in the southwest part of the United States and he heard the term used by his grandmother to refer to a man's mistress or lover. When Salazar approached Rascoe to express his discomfort with Rascoe's use of the term, Rascoe also debated the definition of the term with Salazar and read the definition from the dictionary. When Salazar explained to Rascoe that culturally

the term meant lover or mistress, Rascoe also laughed at him and dismissed Salazar's explanation.

15. After Salazar attempted to talk to Rascoe regarding Rascoe's use of the term QUERIDA, Rascoe called Plaintiff into his office to reprimand her for allegedly having complained to Salazar about Rascoe's sexually inappropriate comments. Rascoe was very angry with Plaintiff and told her that what was discussed between him and her needed to stay between the two of them.

16. Rascoe never apologized to Plaintiff for his use of the term QUERIDA and continued to use the term to refer to Plaintiff. Plaintiff felt insulted, degraded, and humiliated by Rascoe's continued use of the term QUERIDA and by his refusal to acknowledge what Plaintiff and Salazar had explained to him was the very offensive cultural meaning of the term.

17. On August 30, 2012, Rascoe went to Plaintiff's office and gave her one of his used shirts. He stood in front of her desk and said, "Para ti Querida." (For you my lover.) Over the next several weeks and months he repeatedly asked Plaintiff when she was going to wear the shirt. Rascoe did not give similar used articles of clothing to male employees.

18. Other examples of Rascoe's harassment and demeaning treatment of Plaintiff include a meeting that occurred on December 11, 2012, when Rascoe motioned for Plaintiff to sit in an empty chair next to him by pulling the chair closer to him and patting the chair. Rascoe's actions in beckoning her to sit next to him by patting the chair, made Plaintiff feel very embarrassed. As a professional woman, Plaintiff felt that Rascoe treated her as if she was his girlfriend and felt offended and embarrassed at his actions in front of other employees.

19. Salazar was present at the December 11, 2012 meeting and observed Rascoe pat the seat of the chair next to him beckoning the Plaintiff to sit next to him. Salazar observed Plaintiff's look of discomfort, embarrassment, and humiliation on her face when Rascoe pulled the chair close to him and patted it for Plaintiff to come and sit next to him. Other employees present at the meeting also observed Rascoe's inappropriate treatment of Plaintiff at the December 11, 2012 meeting.

20. In another example of Rascoe's discriminatory and hostile treatment of Plaintiff, Rascoe issued a counseling memorandum to Plaintiff on April 18, 2013, for her alleged inappropriate conduct and failure to follow supervisory instructions on April 11, 2013. The incidents that lead to the counseling memorandum occurred on April 11, 2013, when Plaintiff had forwarded an email to Rascoe informing him of OIC employee Donna Bruce's refusal to reserve a room for an event sponsored by the Library's Blacks in Government (BIG) organization. In response, Rascoe ordered Plaintiff to reserve the room. On April 11, 2013, after ordering Plaintiff to reserve the room by email, Rascoe banged on Plaintiff's office door, threw open her office door, entered her office, and yelled at her to "do as I tell you to do."

21. In the email exchange that followed between Plaintiff and Rascoe, Plaintiff attempted to explain to Rascoe that she had forwarded the email to him because, as the Director, she thought it was important for him to know that Bruce had refused to help with the requested room reservation. Plaintiff attempted to explain to Rascoe that she herself had not been asked to reserve a room since BIG no longer needed a room reservation. In her email exchange with Rascoe, she also informed him that she found his behavior of

6

banging on her door and yelling at her to "do as I tell you to do" to be offensive, intimidating, and harassing.

22. Rascoe issued the counseling memorandum to Plaintiff without ever inquiring about the facts and whether a room still needed to be reserved. Rascoe never talked to Plaintiff nor to Michele Chisholm, the LOC employee who had requested that OIC assist her in reserving a room for a BIG event, about the status of Chisholm's request for a room reservation. In fact, after Bruce had refused to assist Chisholm in reserving the room, Chisholm told Plaintiff that she no longer wanted OIC to reserve the room for her because she had dealt with OIC previously and had encountered problems dealing with that office. Chisholm no longer wanted OIC to reserve a room for BIG and, in fact, did not ask Plaintiff to reserve a room for BIG.

23. Prior to this April 11, 2013 incident, Plaintiff had prepared a proposal for guidelines regarding how OIC staff would support the LOC affinity groups such as BIG. The proposed guidelines required that OIC administrative staff would provide services to the affinity groups such as making room reservations for them. Rascoe had approved the recommended guidelines for support to the LOC affinity groups.

24. Rascoe attempted to deflect responsibility for having approved the recommended procedures by claiming that his supervisor, Lucy Suddreth, never acted upon the recommendation to formally adopt the procedures. However, Rascoe's email response to Plaintiff on February 27, 2013, does not mention that any further approval would be needed in order to implement the recommended procedures. Rather, when Plaintiff asked in her February 27, 2013 email to Rascoe if he approved the recommendations, Rascoe responded that Plaintiff should proceed. Plaintiff relied on Rasacoe's approval of the

procedures (that administrative staff, i.e., Donna Bruce, had responsibility for reserving rooms for the affinity groups) when responding to Chisholm's request for a room reservation in April 2013.

25. Rascoe's instructions to Plaintiff that she reserve the room for Chisholm and to "do what I told you to do" made no sense in the context of the emails and Plaintiff's communications with Chisholm. Rascoe never took the time to understand the situation and talk with Plaintiff and Chisholm in a rational manner. This incident is just one more example of Rascoe's demeaning harassment of Plaintiff and his arrogant sexist attitude in ordering a female subordinate to "do what I told you to do."

26. On May 15, 2013, Rascoe spoke at an "All Hands" meeting at the Library. The topic of his speech was "Leveraging Diversity." During his presentation he talked about the decline of adult bookstores and the extensive collection of adult books at the library. He referred to the employees who review the adult book collection in the Copyright Office as "suckers" and commented that the office is the "glue and lubricant" that holds the Library together. Plaintiff and many other LOC employees were present at this meeting.

27. On August 6, 2013, Rascoe met with Plaintiff to discuss her performance appraisal. Plaintiff had received "Outstanding", a rating of 5, the highest out of a possible 5, on most of her performance appraisals in the past. Rascoe lowered her performance appraisal to "Successful", a rating of 3 out of 5.

28. Plaintiff was anxious about meeting with Rascoe alone and asked that the door to his office be left open. Rascoe laughed at her request to leave the door open. During the performance appraisal discussion, Rascoe did not discuss Plaintiff's accomplishments. Rather, Rascoe made reference to the incidents that lead to the April 18, 2013 counseling

memorandum and to Plaintiff's subsequent EEO activity. Rascoe discussed Plaintiff's "personal demeanor," told her she did not say good morning to him, and inquired whether she had a mental disability. Plaintiff perceived Rascoe's conduct as aggressive and threatening. Rascoe yelled at Plaintiff, leaned across his desk, pointed his finger at her, ordered her to be quiet, and yelled "SILENCE" even though Plaintiff was not talking because she felt threatened and was frightened by Rascoe's behavior towards her.

29. Plaintiff feared Rascoe was going to hit her. Plaintiff wanted to leave Rascoe's office but was concerned about what he would do and was afraid she might be charged with insubordination if she got up and left. Rascoe stood over Plaintiff, yelled at her to leave his office, but moved to block the door as he continued to yell at Plaintiff. Then Rascoe moved away from the door, still yelling at Plaintiff, and Plaintiff was able to get up and leave Rascoe's office.

30. Plaintiff filed a complaint with the Inspector General of LOC a few days after the events of August 6, 2013, that she had been threatened with physical violence in the work place.

31. Immediately after filing her IG complaint, Plaintiff was removed from her position in OIC and placed in a position in another office, Integrated Support Services (ISS). Plaintiff no longer had her own office and for many months had no assigned duties. Meanwhile, Rascoe remained in the position of OIC Director.

32. Plaintiff initiated the EEO administrative complaint process in April 2013, when she contacted Thelma Brown in OIC shortly after receiving the April 18, 2013 counseling memorandum. Plaintiff's EEO complaint was investigated and a hearing was held by a Hearing Examiner on March 23 and 24, 2015. On July 6, 2015, the independent Hearing

Examiner found that the Library was vicariously liable for the hostile work environment created by Rascoe, as alleged and proven by Plaintiff.

33. Despite detailed findings of a discriminatory hostile work environment by the independent Hearing Examiner, on December 7, 2015, the Library issued its final agency decision summarily finding no discrimination.

## COUNT I SEX DISCRIMINATION AND SEXUAL HARASSMENT

34. Plaintiff repeats and incorporates by reference all of the allegations set forth in all of the paragraphs above.

35. Plaintiff is a female and was treated in a discriminatory and harassing manner by Rascoe.

36. Kirk Rascoe is a male and he harassed Plaintiff on the basis of her sex.

37. Rascoe was Plaintiff's supervisor at time of the incidents in this Complaint. Plaintiff was Rascoe's subordinate employee.

38. Male employees were not treated in a similarly disrespectful and discriminatory manner by Rascoe.

39. Rascoe' use of the term QUERIDA constitutes direct evidence of sex discrimination and sexual harassment.

40. For the reasons set forth in this Complaint, Defendant's actions violated Title VII of the Civil Rights Act of 1964.

41. Defendant's actions were motivated by malice and reckless disregard for Plaintiff's rights under law.

42. As a result of Defendant's actions, Plaintiff has suffered, and will continue to suffer, economic and non-economic damages, emotional distress, and other compensable damages.

## COUNT II HOSTILE WORK ENVIRONMENT

43. Plaintiff repeats and incorporates by reference all of the allegations set forth in all of the paragraphs above.

44. Plaintiff was subjected to a severe and pervasive hostile work environment. Rascoe's repeated harassment of Plaintiff was severe and pervasive.

45. The harassment and hostile work environment altered the terms and conditions of Plaintiff's employment at the Library.

46. The hostile work environment was created and perpetuated by Rascoe, a male. Rascoe was Plaintiff's supervisor at the time of the incidents in this Complaint. Plaintiff was Rascoe's subordinate employee.

47. The hostile work environment included harassment of Plaintiff on the basis of her sex.

48. The harassment was unwelcome and occurred because Plaintiff is female.

49. Plaintiff made Rascoe aware of the hostile work environment but he and the Library failed to take any steps to prevent the continued harassment and failed to take prompt remedial action.

50. Plaintiff perceived the work environment as hostile and harassing and a reasonable person in her position would view the work environment as hostile and harassing.

## COUNT III RACE and NATIONAL ORIGIN DISCRIMINATION

51. Plaintiff repeats and incorporates by reference all of the allegations set forth in all of the paragraphs above.

52. Plaintiff is Hispanic and of Mexican American national origin.

53. Plaintiff's original language is Spanish.

54. Rascoe is not Hispanic and his native language is not Spanish.

55. Rascoe's discriminatory, hostile and harassing treatment of Plaintiff was based on her race and national origin.

56. For the reasons set forth in this Complaint, Defendant's actions violated Title VII of the Civil Rights Act of 1964.

57. Defendant's actions were motivated by malice and reckless disregard for Plaintiff's rights under law.

58. As a result of Defendant's actions, Plaintiff has suffered, and will continue to suffer, economic and non-economic damages, emotional distress, and other compensable damages.

## COUNT IV RETALIATION

59. Plaintiff engaged in protected EEO activity under Title II of the Civil Rights Act of 1964 when she opposed Rascoe's discriminatory and harassing behavior.

60. Plaintiff put Rascoe and the Library on notice that she considered his actions offensive, harassing, hostile, discriminatory, and retaliatory when she sent him several emails beginning in July 2012 until August 2013 regarding his actions against her.

61. Plaintiff also put the Library on notice of her allegations of discrimination, harassment, a hostile work environment, and retaliation when she initiated EEO activity in or about April 2013.

62. Rascoe retaliated against Plaintiff when he continued to subject her to unwelcome sexual harassment by continuing to refer to her as QUERIDA.

63. Rascoe retaliated against Plaintiff when he yelled at her, issued her a counseling memorandum, and lowered her performance appraisal. The issuance of the counseling memorandum to Plaintiff on April 18, 2013, constitutes retaliation against Plaintiff for having put Rascoe on notice that Plaintiff was offended by Rascoe's intimidating and harassing behavior towards her.

64. Rascoe's retaliation against Plaintiff took the form of continued discriminatory acts of harassment, which escalated after the filing of her EEO complaint in April 2013 and culminated in the August 6, 2013 meeting.

65. These retaliatory acts occurred within only a few months of Plaintiff initiating EEO activity.

66. Rascoe's campaign of discriminatory treatment and harassment of Plaintiff included retaliation against her when she voiced her opposition to his harassment and hostile treatment as well as retaliation against her for engaging in the EEO process.

67. The LOC retaliated against Plaintiff when, in August 2013, Plaintiff was removed from her position and placed in another office with no duties or responsibilities, while the LOC permitted Rascoe to remain in his position as the OIC Director.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant, and award the following relief:

a. Declaratory relief, including but not limited to a declaration that Defendant's actions violate Title VII of the Civil Rights Act;

b.  Injunctive relief, including but not limited to reinstatement of Plaintiff to her prior position in OIC and an order restraining Defendant from engaging in any further discriminatory conduct of the types of which Plaintiff complains herein;

c.  Remove Rascoe permanently from his position with the LOC;

d.  Restoration of leave taken by Plaintiff due to the discriminatory hostile work environment created by Rascoe;

e.  Expunge the counseling memorandum from all agency records;

f.  Raise Plaintiff's performance appraisal for 2013 to Outstanding with commensurate bonus and award;

g.  Compensatory damages;

h.  Attorneys' fees and costs;

i.  Any additional relief as justice allows.


**JURY DEMAND**

Plaintiff demands a trial by jury.


**VERIFICATION**

I, Ida Hernandez, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


_Ida Hernandez_                    2/29/16
Ida Hernandez                      Date

14

Respectfully submitted,

/s/ Joseph V. Kaplan
/s/ Adria S. Zeldin

Joseph V. Kaplan (DC Bar 347344)
Adria S. Zeldin (DC Bar 442576)
Passman & Kaplan, P.C.
1828 L Street, Suite 600
Washington, DC 20036
Tel: 202-789-0100
Fax: 202-789-0101
azeldin@passmanandkaplan.com
jkaplan@passmanandkaplan.com